IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00058-MSK-MEH

JEAN C. ROSENFIELD,

      Plaintiff,

v.

HSBC BANK, USA, and
STEPHANIE Y. O'MALLEY,

      Defendants.

---

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is the Plaintiff's Motion for Preliminary Injunction [filed February 1, 2010; docket #24]. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the magistrate judge to hear and determine the Plaintiff's motion. *See* docket #15. The Court held an evidentiary hearing on the motion on March 16, 2010, and the matter is now fully briefed following the Court's request for supplemental briefing. The Court orders that, for the reasons stated herein, Plaintiff's motion is **denied**.

## FINDINGS OF FACT[1]

1.    In 1998, Mrs. Rosenfield and her husband, Charles H. Rosenfield (collectively, the "Rosenfields") purchased the home located at 3461 West Dartmouth Avenue, Denver, Colorado (the "West Dartmouth Property").

---

[1]Some findings are made based upon the Statement of Stipulated and Disputed Facts submitted by the parties in conjunction with the present motion. Docket #56.

2.    Mr. and Mrs. Rosenfield occupied the West Dartmouth Property as their principal residence after they purchased it in 1998, and continue to reside there through the present day.

3.    On or around October 10, 2006, Mrs. Rosenfield applied to Ownit Mortgage Solutions, Inc. ("Ownit") to refinance the loan on the West Dartmouth Property.

4.    Mrs. Rosenfield is a mortgage broker and owner of a mortgage company, Gulf Stream Capital, which brokered the refinancing of her home in 2006.

5.    Pursuant to Mrs. Rosenfield's application with Ownit, Mrs. Rosenfield was seeking to obtain two loans – a first mortgage loan in the principal amount of $388,000 (the "First Loan") and a second mortgage loan in the principal amount of $97,000 (the "Second Loan").

6.    Mrs. Rosenfield's claims in this action relate only to the First Loan.

7.    On November 3, 2006, both loans were closed at Security Title Guarantee Company in Denver, Colorado.

8.    The First Loan was memorialized by an Adjustable Rate Balloon Note (the "Note") in the principal amount of $388,000 in favor of Ownit.

9.    In connection with the First Loan, Mrs. Rosenfield executed a Deed of Trust in favor of Ownit on November 3, 2006 (the "Deed of Trust").

10.   At the closing on November 3, 2006, Mrs. Rosenfield received and executed an Adjustable Rate Balloon Rider.

11.   At the closing on November 3, 2006, Mrs. Rosenfield received and executed a Balloon Rider.

12.   At the closing on November 3, 2006, Mrs. Rosenfield received and executed a Federal Truth-In-Lending Disclosure Statement for the First Loan (the "TIL Disclosure").

13. At the closing on November 3, 2006, Mrs. Rosenfield received and executed the Itemization of Amount Financed (the "Itemization Disclosure") for the First Loan.

14. At the closing on November 3, 2006, Mrs. Rosenfield received and executed two (2) Notices of Right to Cancel for the First Loan (collectively, the "First Loan Rescission Notices").

15. Mrs. Rosenfield did not send Ownit a Notice of Right to Cancel three days after the First Loan closed.

16. The First Note and Deed of Trust were subsequently assigned to HSBC Bank, which is the current holder of the First Note and Deed of Trust.

17. The maturity date on the First Note is December 31, 2036.

18. Mrs. Rosenfield defaulted on the First Loan in May 2008 and has made no payments on the First Loan since that time.

19. HSBC commenced a non-judicial foreclosure of the West Dartmouth Property pursuant to the Deed of Trust.

20. On September 9, 2008, Greg Vernon, on behalf of Mrs. Rosenfield, sent Notices of Intent to Rescind the First Loan to (a) Ownit; (b) Ocwen Loan Servicing, LLC; (c) Welshire Credit Corp.; and (d) Castle, Meinhold & Stawiarski, LLC (collectively, the "Rosenfield Rescission Notices").

21. Through the Notices of Intent to Rescind, Mrs. Rosenfield sought recission based upon alleged violations of the Truth in Lending Act (TILA) and the Home Owner's Equity Protection Act (HOEPA) at the November 2006 loan closing.

22. Mr. Vernon sent the Rosenfield Rescission Notices via United States Mail, with sufficient postage attached.

23.	Mrs. Rosenfield did not receive any response to the Rosenfield Rescission Notices.

24.	On July 9, 2009, and in connection with HSBC's non-judicial foreclosure of the West Dartmouth Property, HSBC filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120, Colorado Rules of Civil Procedure (the "Sale Motion") in the District Court for the City and County of Denver, Colorado, Case No. 09CV6810 (the "State Court").

25.	On July 29, 2009, Mrs. Rosenfield filed a Response to the Sale Motion (the "Response").

26.	On December 2, 2009, Mrs. Rosenfield filed Respondent's Memorandum Regarding Scope of Issues for Hearing.

27.	On December 28, 2009, the State Court issued an Order Authorizing Sale of the West Dartmouth Property.

28.	The Federal Reserve Board's H.15 Statistical Release for September 15, 2006 is applicable for the determination of whether the First Loan is subject to the HOEPA.

## PROCEDURAL HISTORY

On December 21, 2009, the Plaintiff commenced this action in the Eighteenth Judicial District Court for the City and County of Denver.  Docket #1-1.  With her complaint, the Plaintiff filed a motion for temporary restraining order and preliminary injunction seeking to enjoin the foreclosure sale of her home.  Docket #1-2.  On December 30, 2009, the state court convened a hearing on the motion, but continued the proceeding to January 13, 2010 to allow Defendants to prepare for the hearing; in turn, the Defendants agreed to postpone the sale until January 14, 2010. Docket #4 at 4-5.

Meanwhile, the Defendants removed the action to this Court on January 12, 2010.  Plaintiff filed a renewed motion for temporary restraining order the following day, January 13, 2010, asking

the Court to restrain Defendants from selling or attempting to sell the subject property "until such time as Plaintiff's Motion for Preliminary Injunction can be heard and determined." *See* docket #4-6 at 2. The same day, Judge Krieger granted in part Plaintiff's motion finding that, while the Court had jurisdiction over Defendant HSBC and could restrain the bank from conducting the sale, the Court did not have jurisdiction over Defendant O'Malley (due to lack of service) and was "powerless" to prevent the Public Trustee from proceeding with the sale. Docket #6 at 5. Thus, Judge Krieger ordered that HSBC provide an immediate request to Public Trustee O'Malley to continue the sale of the property. *Id.*

At a non-evidentiary hearing on January 15, 2010, the parties agreed to postpone the foreclosure sale; thus, Judge Krieger ordered that the sale is stayed pending a determination of a forthcoming motion for preliminary injunction. Docket #15. In addition, Judge Krieger ordered that Plaintiff file a motion for preliminary injunction on or before January 29, 2010. *Id.* At the hearing, the parties consented to the jurisdiction of the magistrate judge to determine the present motion, but not to determine the case as a whole. *Id.*

Subsequently, this Court set an evidentiary hearing and briefing schedule on the impending motion based upon the January 29, 2010 deadline. Only Defendant HSBC responded to the Plaintiff's motion; according to HSBC, the Public Trustee informed them that she "will not be participating in the preliminary injunction hearing." The Court held the evidentiary hearing on March 16, 2010. At the close of the evidence, the Court ordered the parties to file supplemental briefs on two issues: (1) whether a foreclosure sale results in irreparable harm, and (2) whether equitable tolling applies to a one-year statute of limitation following a defendant's lack of response to a rescission notice.

Thereafter, the Plaintiff filed a "Post-Hearing Memorandum" asserting not only arguments on the requested issues, but also new arguments regarding the evidence presented at the hearing. Defendant did not object to the presentation of the new arguments, but rather, responded to them. Therefore, in the interests of justice, the Court will consider all arguments raised both in support and in opposition of the present motion.

## ANALYSIS

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.*; *see also Winter v. N.R.D.C., Inc.*, – U.S. –, 129 S. Ct. 365, 374 (2008) ("[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit has "identified the following three types of specifically disfavored preliminary injunctions ...: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3)

preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier,* 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259 ; *see also Citizens Concerned for Separation of Church & State v. Denver,* 628 F.2d 1289, 1299 (10th Cir. 1980), *cert. denied*, 452 U.S. 963 (1981) (mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts).

Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Injunctions that disturb the status quo alter the parties' existing relationship. *Id.* at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* (emphasis in original). That is, "the status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier*, 427 F.3d at 1260 (quotations and citations omitted) (further defining the "status quo" as the "last peaceable uncontested status existing between the parties before the dispute developed").

Here, the Plaintiff seeks an order "enjoin[ing] and restrain[ing] the Defendants from conducting a sale of Mrs. Rosenfield's home pending the final resolution of this case on the merits." Motion, docket #24 at 17. Such order would not require the Defendant to act in a particular way and would not necessarily afford the Plaintiff all of the relief she may recover after a trial on the merits. As for altering the status quo, Plaintiff filed this action in state court following Defendant's Colo.

7

R. Civ. P. 120 motion for order authorizing the sale of the home, but before the order was issued authorizing the sale. Thus, the "last peaceable uncontested status" before this dispute arose reveals no actual pending sale of the home.[2] *See Schrier,* 427 F.3d at 1260. Thus, the requested relief would not alter the status quo, but rather preserve it. For these reasons, the Court finds that Plaintiff's requested injunctive relief does not require the close scrutiny of a specifically disfavored injunction.

## I.    Irreparable Injury

Plaintiff states that, if the foreclosure sale moves forward, she will lose her home and her right of rescission will be eviscerated. Defendant responds that Plaintiff has no right of rescission because all material disclosures were made pursuant to TILA, that even if Plaintiff had a right of recission, her claim to enforce it is barred by the statute of limitations, and that Plaintiff no longer has the right to possess the property based upon the state court order authorizing sale.

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Thus, the Plaintiff must first show that she will suffer irreparable injury if her request for

---

[2]The Court notes that the Complaint alleges "[a] foreclosure sale currently is set to be conducted on December 31, 2009, by Defendant Stephanie Y. O'Malley, as Public Trustee for the City and County of Denver, Colorado." However, considering the sequence of the filings of Defendants' Rule 120 motion, this action and the order authorizing the sale, the Court must assume that, at the time of the Complaint, the parties knew the sale would not have proceeded without the subsequent court order.

injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (emphasis in original) (citation omitted). Injunctive relief is only appropriate to avoid an existing threat of injury and cannot be employed to protect against an injury that is merely feared to be suffered at some indefinite future date. *See Connecticut v. Massachusetts,* 282 U.S. 660, 674 (1931).

The Court is not convinced that Plaintiff will suffer an irreparable injury if the foreclosure sale proceeds as ordered in this case. First, with respect to Plaintiff's claim that she will lose her right of rescission (to the extent that she retains one) upon the sale of the property, the law provides that "[a]n obligor's right of rescission shall expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first." *See* 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3); *Kruse v. U.S. Bank, N.A.*, No. 09-2302-LTB, 2010 WL 743509, *3 (D. Colo. March 1, 2010) ("[p]laintiff's right to rescission expired pursuant to 15 U.S.C. § 1635(f) upon the sale of the property"); *Jones v. Saxon Mortg.*, 537 F.3d 320, 324-325 (4th Cir. 1998) (right of rescission under TILA expired upon foreclosure sale of property in question).

Thus, the Plaintiff is correct that her right to rescind would terminate upon the sale or transfer of her interest in the property, but only if the sale occurred *before* the conclusion of the three-year limitation. Here, the three-year limitation concluded on November 3, 2009. Consequently, her right of rescission, to the extent that she retained one after the initial three-day

period (*see* discussion below) has already expired. Of course, the Court acknowledges Plaintiff's allegation that she exercised her right of rescission in September 2008 and, now, seeks to enforce the rescission through this action.[3] But, she cannot demonstrate any harm from the "extinction" of a right that has already expired.

In addition, the Plaintiff claims that she will suffer irreparable harm by losing her home in a foreclosure sale. Considering that the Plaintiff retains a right to redeem following a foreclosure sale, *see* Colo. Rev. Stat. § 38-38-501, and that any subsequent harm in losing her property interest may be compensated by money damages, the Court is not entirely convinced that the stated harm resulting from the sale of the property itself is irreparable.

However, the Court recognizes it is, at least, possible the Plaintiff may suffer an irreparable injury from the loss of her home if the sale is not enjoined. To be entitled to a presumption of irreparable injury, then, the Plaintiff must establish a likelihood of success on the merits of her claims that a right of rescission arose from Defendants' failure to make material disclosures required by TILA and HOEPA at the time of her loan closing, that she timely exercised her right of rescission within the three-year period, and that she has timely filed an action enforcing her right of rescission.

## II.    Likelihood of Success on the Merits

For purposes of her motion, the Plaintiff must set forth sufficient proof, at this stage of the litigation, that she has a substantial likelihood of success on the merits of his claims. *Schrier*, 427 F.3d at 1258.

The Plaintiff seeks to enforce her right of rescission, which arises under the TILA, 15 U.S.C.

---

[3]As discussed more fully below, the time period within which to exercise a right of rescission is different than the time period within which to seek judicial enforcement of a right that has been exercised.

§ 1635, and Regulation Z, 12 C.F.R. § 226.15 (open-end credit) and § 226.23 (closed-end credit). It is undisputed that the subject loan is a closed-end home loan. Thus, pursuant to 12 C.F.R. § 226.23(a)(3), a consumer may exercise the right to rescind until midnight of the third business day following consummation of the loan, delivery of the required notice, or delivery of all material disclosures, whichever occurs last. As stated above, if the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. *Id.* The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) (for closed-end home mortgages) and 226.35(b)(2) (for higher priced mortgages). *Id.*, n. 48.

Here, it is undisputed that Plaintiff did not exercise her right to rescind within three business days of the loan closing. However, the Plaintiff claims that Defendant failed to make material disclosures required by federal law and, thus, her right of rescission extended to three years after her loan closing. Although Plaintiff's complaint alleges violations under the Real Estate Settlement Procedures Act and "state law" in addition to TILA and HOEPA violations, the within motion focuses only on certain alleged TILA and HOEPA violations.[4] HSBC contends that, as an assignee of this loan, it is liable only if a violation is "apparent on the face of the disclosure statement" given to the obligor by the assignor. *See* 15 U.S.C. § 1641(e)(1)(A). A violation is apparent on the face of the disclosure statement if (A) the disclosure can be determined to be incomplete or inaccurate

---

[4]Plaintiff concedes that her claims for money damages under TILA and HOEPA are irrelevant to the motion for preliminary injunction focusing on her claim for enforcement of her right to rescind. Docket #45 at 7 n.3.

by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement, or (B) the disclosure statement does not use the terms or format required to be used by the applicable subchapter. 15 U.S.C. § 1641(e)(2). Here, Defendant contends that Plaintiff has failed to make this showing.

A.    Alleged TILA Violations

First, Plaintiff contends that Defendant violated the TILA when Ownit Mortgage failed to "accurately disclose the finance charge for the loan." Pursuant to the TILA, the disclosed finance charge may generally be treated as accurate only if the amount disclosed as the finance charge (i) is understated by no more than $100, or (ii) is greater than the amount required to be disclosed. 15 U.S.C. § 1605(f); 12 C.F.R. § 226.18(d)(1). However, the Plaintiff contends that this case is subject to the standard articulated in 15 U.S.C. § 1635 for foreclosure transactions:[5] "the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter." 15 U.S.C. § 1635(i)(2).

In her motion, the Plaintiff asserts that the HUD-1 Settlement Statement provided to her and executed by her at the loan closing lists $4,796.25 in "settlement charges to borrower" that are not included on the TILA Disclosure statement. *See* Exhibit 6, docket #55-7, at 1 (line 103) and at 2 (line 1400). Plaintiff argues that this discrepancy is 47 times higher than the margin of error

_____

[5]Although the facts are unclear as to when non-judicial foreclosure proceedings began in this case, the Plaintiff, by invoking Section 1635, concedes that Defendant initiated non-judicial foreclosure proceedings before she exercised her right of rescission in September 2008. *See* 15 U.S.C. § 1635(i)(1).

permitted in subsection (i) of the statute. Defendant first counters[6] that Plaintiff incorrectly relies on an "initial" HUD Settlement Statement as opposed to a "final" statement, executed by the Plaintiff at the loan closing, which lists $5,474.13 as the "settlement charges to borrower." *See* Exhibit 5, docket #55-6, at 1, 2. Second, Defendant contends the applicable charges (listed on Exhibit 5, page 2) that are required to be disclosed under TILA total $3,125.25, which is well below the $3,470.25 listed as the "prepaid finance charge" on the Itemization of Amount Financed form (Exhibit 9, docket #55-10) and, thus, the finance charge was "accurately" disclosed.

Because a plaintiff bears the burden to prove the necessity of a preliminary injunction, the failure to aver sufficient detail in the factual allegations precludes the issuance of a preliminary injunction. *Soesbe v. Countrywide Home Loans*, 2009 WL 3418212, *3 (D. Colo. Oct. 20, 2009) (citing *Beltronics USA, Inc. v. Midwest Inventory,* 562 F.3d 1067, 1070, 1075 (10th Cir. 2009)). Here, the Plaintiff has presented no persuasive evidence to rebut the Defendant's arguments. Rather, at the hearing, the Plaintiff's expert, Greg Vernon, agreed that the same charges identified by the Defendant and listed on the HUD Settlement Statement were required to be disclosed. The expert tried to contend that the $75 courier fee listed on line 1111 was not listed in the disclosures; however, the fee was, in fact, added to the $3,125.25 sum. In addition, the expert testified that line 1109 reflects a $96 difference between what was listed on the settlement statement and what was disclosed on the TIL disclosure form; however, he also agreed that line 1109 was not a required disclosure.

Following the hearing, the Plaintiff next argues that, because the sums listed in the "Finance

---

[6]Defendant also argues that, to the extent the Plaintiff seeks statutory damages for the alleged TILA violations, such claims are barred by the one-year statute of limitations. However, the Plaintiff concedes that the within motion does not apply to her claim for statutory damages.

Charge" and "Amount Financed" (calculated as the loan amount minus the prepaid finance charge) sections of the TIL disclosure form add up exactly to the sum listed in the "Total of Payments" section and the itemized payments listed in the payment schedule add up exactly to the sum listed in the "Total of Payments" section, then the $3,470.25 prepaid finance charge necessarily was not disclosed on the form as required. Post-Hearing Memo, docket #54, at 3-4. Defendant counters that the "Total of Payments" section and the payment schedule listed on the TIL form are separate and distinct disclosure requirements pursuant to 12 C.F.R. § 226.18, and they disclose only what the consumer is meant to repay on a schedule. As such, Defendant argues, any charges that are prepaid by the consumer necessarily would *not* be included in these sections. Post-Hearing Response, docket #59.

Essentially, the Plaintiff raises the question of whether the prepaid finance charge must be included on the TIL disclosure form itself. According to 12 C.F.R. § 226.18 governing the content of disclosures, a creditor must disclose the following information, in pertinent part:

(c)     Itemization of amount financed.

      (1)     A separate written itemization of the amount financed, including ...

            (iv)     The prepaid finance charge.

12 C.F.R. § 226.18(c)(1)(iv). Here, there is no dispute that Plaintiff received and executed at the loan closing a written "Itemization of Amount Financed," including a description of the items constituting the prepaid finance charge of $3,470.25. Exhibit 9, docket #55-10. The Plaintiff has provided no persuasive argument or evidence at this stage of the litigation (other than conclusory statements regarding the calculation of the Finance Charge) demonstrating that the Defendant also

is required to include the prepaid finance charge on the TIL disclosure form itself.[7]  Thus, the Plaintiff has failed to meet her burden to demonstrate that she is likely to succeed on her argument the Finance Charge was inaccurately disclosed at the loan closing.

The Plaintiff next argues, again for the first time in her post-hearing memorandum, that Defendant failed to disclose "the method of determining the finance charge and the balance upon which a finance charge will be imposed," which, according to the Plaintiff, are material disclosures under the TILA.  *See* 15 U.S.C. § 1602(u).  Defendant responds that such material disclosures are required only for open-end credit transactions and, thus, are not applicable here.  Compare 12 C.F.R. § 226.15(3)(a) n. 36 with 12 C.F.R. § 226.23(3)(a) n. 48.  Although given the opportunity to do so, the Plaintiff did not reply to Defendant's argument.  The Court agrees with Defendant and finds that Plaintiff has failed to demonstrate that Defendant was likely required to disclose at the loan closing in this matter the "the method of determining the finance charge and the balance upon which a finance charge will be imposed."

Therefore, the Court finds that Plaintiff has failed to meet her burden demonstrating a likelihood of success on the merits of her claim that Defendant failed to make material disclosures under the TILA, which would have provided the Plaintiff a right of rescission after the initial three-business-day period.  Accordingly, the Plaintiff does not enjoy a presumption of irreparable harm for purposes of the within motion based upon alleged TILA violations.

---

[7] No evidence has been presented in this case as to the precise calculation of the $1,260,878.54 Finance Charge and the Court rejects Plaintiff's improper attempt to place the burden on the Defendant in this regard: "HSBC does not dispute that the TILA Disclosure provided to Mrs. Rosenfield did not include prepaid finance charges in the calculation of the Finance Charge disclosed to her."  *See* docket #62 at 2.

B.     Alleged HOEPA Violations

Plaintiff contends that her refinanced loan is a "high-interest" mortgage protected by the Home Owners Equity Protection Act (HOEPA) and that Defendant not only failed to make material disclosures pursuant to the HOEPA, but also imposed a prepayment penalty in violation of the HOEPA.  Defendant responds that the First Loan is not a "high-interest" loan subject to HOEPA and, therefore, no additional disclosures nor omission of the prepayment penalty were required.

The HOEPA, codified at 15 U.S.C. § 1639, was enacted as an amendment to TILA to protect consumers against various practices in connection with certain high interest rate loans.  *Lynch v. RKS Mortgage, Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008).  The Act applies to high-interest mortgages in which (i) the annual percentage rate (APR) at consummation will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the loan is received by the creditor, or (ii) the total points and fees payable by the consumer at or before loan closing will exceed the greater of eight percent of the total loan amount or $400.  *Id.*; *see also* 15 U.S.C. 1602(aa); 12 C.F.R. § 226.32(a)(1).   HOEPA requires that additional disclosures be made to the consumer no later than three days *prior* to loan consummation. *See* 15 U.S.C. § 1639(b)(1).  In addition, HOEPA requires that a high-interest mortgage may not contain terms for a prepayment penalty.  15 U.S.C. § 1639(c).  Any high-interest mortgage that contains a provision prohibited by the HOEPA is deemed a failure to deliver the required material disclosures, and the loan may be rescinded within the three-year period provided by TILA.  15 U.S.C. § 1639(j).

The question before the Court for purposes of the within motion is whether Plaintiff can

demonstrate a likelihood that the subject loan is a high-interest mortgage protected by the HOEPA. The parties agree that Federal Reserve Board form H-15 Selected Interest Rate Tables, released September 18, 2006, provides the proper yield rates for September 15, 2006 (the month preceding receipt of Plaintiff's loan application pursuant to subsection (i) above) necessary to calculate the trigger rate for application of the HOEPA. Exhibit 29, docket #56-1. The parties also agree that the proper yield rate is a "Treasury constant maturity" rate; however, these rates fall under two categories, "nominal 10" and "inflation indexed 11." The parties disagree as to which category provides the proper yield rate applicable to this loan.

The Plaintiff argues that "logic and reason strongly favor the use of the inflation-indexed rates," since the subject loan is an adjustable rate mortgage "for which the interest rate changes in accordance with changing conditions such as inflation." Post-Hearing Memo, docket #54, at 9. The Plaintiff contends further that the Federal Reserve Board Official Staff Commentary to 12 C.F.R. §226.32(a)(1)(i) provides, if the Form H.15 does not contain a yield rate for a 30-year loan (the maturity of the subject loan in this case), then the rate for a 20-year maturity should be used in comparison to the APR. *Id.* Therefore, according to Plaintiff, using the 20-year inflation-indexed rate on September 15, 2006, which was 2.36%, the trigger rate for HOEPA is 10.36%, which is below the 10.54% APR in this case and, thus, the loan is protected as a high-interest mortgage under HOEPA. *Id.* at 10.

Defendant counters that the Federal Reserve Board, through the Official Staff Commentary to 12 C.F.R. § 226.32(a)(1)(i), requires that creditors use the yield rate corresponding to the constant maturity that is closest to the loan maturity, and since the H.15 provides a yield rate for a 30-year "nominal 10" constant maturity, that rate is applicable to the 30-year loan here. Post-Hearing

Response, docket #59.  Defendant also argues that the inflation-indexed yield rate is an improper trigger rate since the Board expressly states that creditors should not use the results of Treasury auctions at which inflation-indexed rates are sold.  *Id.*  Finally, Defendant asserts that inflation-indexed rates are protected from inflation movement in the market; thus, such rates are not necessarily applicable to an adjustable rate mortgage.  *Id.*

The question of which "constant maturities" yield rate to use - "nominal 10" or "inflation indexed 11" - to determine the applicability of the HOEPA to a 30-year adjustable rate mortgage appears to be a matter of first impression in this circuit.  The parties have provided, and the Court has found, no Tenth Circuit case law addressing this question directly.  Defendant has cited three district court opinions in other circuits in which the courts appear to apply the 30-year "nominal 10" rate to adjustable rate mortgages without analyzing whether a different rate should apply.  *See Palmer v. GMAC Commercial Mortgage*, 628 F. Supp. 2d 186, 190 (D.D.C. 2009); *Johnston v. Lindaur*, No. 07-01280-GEB-EFB, 2010 WL 147939, *4 (E.D. Cal. Jan. 12, 2010) (unpublished); *Santana v. First NLC Financial Servs., LLC*, No. 08-2228-JM, 2009 WL 1657382, *3 (S.D. Cal. June 12, 2009) (unpublished).

Having no binding case authority on the subject, the Court looks to the Federal Reserve Board's interpretation of the applicable statute and regulations.  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("... deference to the [Federal Reserve Board] is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive ...").  The Board instructs creditors that, "[t]o determine the yield on comparable Treasury securities for the annual percentage rate test, creditors may use the yield on actively traded

issues adjusted to constant maturities published in the Board's 'Selected Interest Rates' (statistical release H-15)." *See* March 28, 2003 Official Staff Commentary to Final Rule for 12 C.F.R. part 226, ¶ 4, Exhibit 30,[8] docket #59-1, at 14. The "nominal 10" and "inflation indexed" rates are both contained within the "Treasury constant maturities" section of the H-15 [*see* Exhibit 29, docket #56-1]; however, the Board does not distinguish between the two categories. Instead, the Board asserts, "[c]reditors must use the yield corresponding to the constant maturity that is closest to the loan's maturity." Apparently, based upon this language, the above-cited courts used the 30-year nominal 10 rate to determine whether HOEPA applied to 30-year adjustable rate mortgages (the H-15 does not list an inflation indexed rate for a 30-year loan).

However, the Plaintiff relies for her proposition that the 20-year inflation indexed rate is the appropriate comparator on the following Board comment, which cites an example for determining the applicable yield rate for a 30-year loan under certain circumstances:

> If a mortgage loan has a term of 30 years, and the H-15 does not contain a yield for 30-year constant maturities, but contains a yield for 20-year constant maturities, and an average yield for securities with remaining terms to maturity of 25 years and over, then the annual percentage rate on the loan is compared with the yield for 20-year constant maturities.

March 28, 2003 Official Staff Commentary to Final Rule for 12 C.F.R. part 226, ¶ 4(iii), Exhibit 30, docket #59-1, at 14-15. The Court is not persuaded at this stage of the litigation that the comment applies. The Board's language includes the qualifier "and the H-15 does not contain a yield for 30-year constant maturities," which is not true in this case. The H-15 clearly lists a 30-year constant maturity (nominal 10) rate of 4.92% on September 15, 2006.

---

[8]Exhibit 30 was proffered by the Defendant with its post-hearing response. Plaintiff made no objection to the admissibility of the exhibit; therefore, the Court deems the exhibit admitted for purposes of this motion.

Moreover, the Court agrees with Defendant that the "inflation indexed" rate is not necessarily a proper comparator here. Considering the Board's admonition that creditors should not use results of Treasury auctions, and inflation indexed rates apparently are sold at Treasury auctions,[9] the Court finds it would be contrary to the Board's intention for creditors to use the inflation indexed rates for a determination of HOEPA applicability. Further, because the inflation indexed rates are "inflation protected" from movement in the market [*see* Exhibit 29, docket #56-1, at 3], it appears these rates would be contrary to the Plaintiff's adjustable rate which is subject to, and adjusts for, the changing conditions in the market, including inflation.

Accordingly, for purposes of the within motion, the Court finds that Plaintiff has failed to demonstrate that the inflation indexed rate is the proper yield rate by which to compare the Plaintiff's APR of 10.542%. Assuming, then, that the proper rate to compare with Plaintiff's 30-year adjustable rate mortgage is the 30-year nominal 10 rate of 4.92%, the rate is adjusted upward eight percentage points in accordance with 15 U.S.C. 1602(aa) to 12.92%. Because Plaintiff's APR is less than this comparator rate, the Plaintiff has failed to demonstrate a likelihood of success on the merits of her claim that the subject loan is protected by the HOEPA, which, if she were to prove material disclosures were not delivered, might provide her a right of rescission past the three-business-day period. Consequently, Plaintiff has failed to show that she enjoys a presumption of irreparable harm with respect to any right of rescission.

C.    Statute of Limitations

Even if the Plaintiff were to prove she had a right to rescind the subject loan after the initial three-day period, the Court finds she has failed to demonstrate she is likely to succeed on her claim

_____

[9]The Plaintiff does not dispute the Defendant's contention in this regard.

that this enforcement action was filed in a timely manner.

It is undisputed that the loan closing took place on November 3, 2006; thus, assuming Plaintiff retained a right to rescind past the initial three-day period, she must have exercised that right on or before November 3, 2009. 15 U.S.C. § 1635(f). Here, the evidence demonstrates that the Plaintiff issued her notices of intent to rescind on September 9, 2008, within the three-year time frame. Exhibit 14, docket #55-15. The Defendant does not dispute that, assuming it received the notice, it failed to respond to the notice within the required 20 days. *See* 12 C.F.R. § 226.23(d)(2).

Such failure to respond may result in a TILA violation for which the Plaintiff may seek actual and statutory damages. *See Kruse v. U.S. Bank, N.A.*, No. 09-02302-LTB, 2010 WL 331354, *3 (D. Colo. Jan. 20, 2010) (unpublished) (citing 15 U.S.C. § 1640(a)). Any such action may be brought within one year from the date of the occurrence, which, for claims of failure to effectuate rescission, is the earlier of when the creditor refuses to effectuate rescission or twenty days after it receives notice of rescission. *Id.*

In this lawsuit, the Plaintiff seeks to enforce her right of rescission. She argues that the one-year statute of limitations does not apply to rescission actions and cites cases finding that claims for enforcement of rescission may be brought outside of the three-year statute of repose.[10] The Court

---

[10]The Court finds Plaintiff's reliance on the Tenth Circuit's opinion in *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir. 1974), for the proposition that § 1640(e) does not apply to a rescission action under any circumstances, to be misplaced. In that case, the consumer discovered approximately fifteen months after the loan closing that material disclosures were not delivered pursuant to TILA. *Id.* at 1134. The following day, the consumer notified the lender of his intent to rescind. *Id.* The lender ignored the notice and, ten days later, posted a notice of foreclosure. *Id.* The consumer brought an action for rescission one month later. *Id.* The court, in finding that § 1640(e) did not bar the Littlefields' rescission action, rejected the lower court's determination that the one-year statute of limitation ran *from the date of the loan transaction* that had occurred sixteen months earlier. *Id.* at 1135 (emphasis added). The opinion mentions nothing of the fact that a refusal or failure to respond to a notice of right to rescind is itself a

21

agrees to some extent; however, for purposes of the within motion, the Court finds it contrary to principles of justice and efficiency, and to the intent of the applicable statutes in this case, to accept a theory espousing *no* time limit for filing claims for enforcement of rescission. In fact, the Court has found no cases holding that a claimant may file an enforcement action *any time* after the lender fails or refuses to respond to a rescission notice.

Rather, the Court finds persuasive those cases adopting the one-year statute of limitations in 15 U.S.C. § 1640(e) by which to file claims for enforcement of rescission following a defendant's lack of response to (or refusal of) a timely notice of rescission. *See, e.g., In re Hunter*, 400 B.R. 651, 662 (Bankr. N.D. Ill. 2009) (finding that a suit to enforce a right of rescission following the defendant's failure to respond to a timely notice may be brought within one year of defendant's failure); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 40 (D.D.C. 2006) (applying TILA's one-year statute of limitations to a claim for enforcement of rescission following defendant's failure to acknowledge notice); *Velazquez v. HomeAmerican Credit, Inc.*, 254 F. Supp. 2d 1043, 1048 (N.D. Ill. 2003) (applying § 1640(e) to a claim that the mortgagor failed to rescind upon a timely notice); *Santos v. Countrywide Home Loans*, No. 09-00912-AWI, 2009 WL 2500710, *5 (E.D. Cal. Aug. 14, 2009) (unpublished) (same).

Accordingly, assuming the Plaintiff retained the right at the time she exercised it, her claim arose on or about October 2, 2008, twenty days after Defendant likely would have received the

---

violation of the TILA for which a party might seek statutory damages. 15 U.S.C. § 1640(a). Unlike the Plaintiff here, the plaintiff in *Littlefield* brought the action well within the one-year limitation from the lender's failure to respond to the rescission notice (actually the action was brought less than a month after the 20-day response period). Therefore, this Court finds that *Littlefield* is distinguishable and is not applicable for the proposition Plaintiff tenders under the circumstances of this case.

notice by mail.[11]  Thus, pursuant to 15 U.S.C. § 1640(e), the Plaintiff was required to file her claim on or before October 2, 2009.  However, she did not file this lawsuit until December 21, 2009.

The Plaintiff argues that, if the one-year statute of limitations applies to this case, the running of the statute was tolled during the Rule 120 state court proceeding when she raised a "rescission defense" to the motion filed by Defendant.  TILA's one-year statute of limitations is subject to equitable tolling.  *Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 706 (10th Cir. Oct. 9, 2008) (unpublished).  Plaintiff contends that "where a party commences a TILA action or raises a TILA counterclaim in state court, the one-year statute of limitations set forth in 15 U.S.C. § 1640(e) is tolled for actions in federal court."  Docket #54 at 12.  The cases cited by the Plaintiff for this proposition do not necessarily reach the same conclusion under similar circumstances.  Nevertheless, the Plaintiff does not explain how simply raising the defense of rescission in response to a motion filed in a Rule 120 proceeding operates to toll a statute of limitations.[12]  Even if raising the defense is sufficient, however, the Plaintiff failed to provide the Court a copy of the response for a determination as to whether the response gave Defendant sufficient notice and knowledge of the rescission claim.  Further, Plaintiff fails to explain why the statute should be tolled from the response date in July/August 2009 until December 21, 2009.  Moreover, the Court notes that the Plaintiff, a mortgage broker, had full knowledge on July 9, 2009 when Defendant commenced the Rule 120 proceeding that she had exercised her right to rescind the previous September.  She provides no information as to why she failed to file a claim for rescission any time after the 20-day notice period

---

[11]There is no evidence nor indication that the Defendant refused to effectuate rescission after receiving Plaintiff's notice of right to rescind.

[12]The cases cited by the Plaintiff involve affirmative filings made by certain plaintiffs in state court, which may have served to toll the statute of limitations.

expired.

Therefore, the Court concludes that the Plaintiff has failed to meet her burden at this stage of the proceeding to demonstrate a likelihood of success on the merits of her claim that her enforcement action was timely filed pursuant to TILA and HOEPA.

**III.     Balance of Hardships & Public Interests**

Generally, the Court agrees that there is a strong public interest in preventing individuals from losing their homes based upon unconscionable loan agreements. In addition, the Court recognizes the significant injury a homeowner may suffer from losing a home. The Court must also recognize, however, that this case involves a seasoned mortgage broker who participated in the brokering of the subject loan and who has apparently paid nothing on the loan since May 2008. Defendant has suffered, and will continue to suffer, a financial hardship for the period of non-payment.

If a foreclosure sale were to go forward on this property, the Plaintiff might risk losing her home; however, she also has the right to cure before the sale and the right to redeem with a junior lien holder following the sale of the property. With respect to rescission, the Court has already determined that the Plaintiff has failed to demonstrate a likelihood at this stage of the litigation that she retains a right to rescind past the three-day rescission period following the loan closing.

Accordingly, the Court finds that Plaintiff has failed to make the requisite showing to tip these factors in her favor.

**<u>CONCLUSION</u>**

Based upon the foregoing, the Court finds that Plaintiff has failed to meet her burden to show that a preliminary injunction is necessary in this case. Therefore, it is ORDERED that the Plaintiff's

Motion for Preliminary Injunction [filed February 1, 2010; docket #24] is **DENIED**.

Dated this 26th day of May, 2010, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge