IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00058-MSK-MEH

JEAN C. ROSENFIELD,

    Plaintiff,

v.

HSBC BANK, USA, and
STEPHANIE Y. O'MALLEY, as Public Trustee for the City and County of Denver,

    Defendants.

___

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
___

**THIS MATTER** comes before the Court pursuant to Defendant HSBC Bank, USA's ("HSBC") Motion to Dismiss **(# 23)**, the Plaintiff's response **(# 35)**, and HSBC's reply **(# 44)**.

## FACTS

According to the Complaint **(# 2)**, on November 3, 006, the Plaintiff entered into a mortgage refinance agreement with Ownit Mortgage Solutions ("Ownit") concerning her residence on West Dartmouth Avenue in Denver, Colorado. The Plaintiff contends that Ownit "failed and/or refused to make many of the disclosures required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, [and] the Homeowner's Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639." Specifically, she contends that Ownit violated HOEPA in that the loan included a prohibited prepayment penalty and that Ownit failed to provide disclosures required by HOEPA;

1

that it violated TILA in that Ownit did not provide Right of Rescission notices, did not correctly identify in its disclosures when the Rescission period ended, did not provide her with required Adjustable Rate Disclosures at the time of her loan application and supplied incomplete Adjustable Rate Disclosures, that Ownit did not make required disclosures concerning finance charges, and inaccurately stated the total finance charges on the loan. The Plaintiff alleges that Ownit "sold or assigned" the loan to HSBC.

The Plaintiff contends that, on September 9, 2008, she sent a Notice of Rescission to HSBC, purporting to rescind the loan due to Ownit's violations of TILA and HOEPA. The Plaintiff states that she received no response to this Notice of Rescission.

The Plaintiff allege three "claims" for relief (more accurately, three categories of relief that she seeks): (i) a claim for declaratory relief, requesting a declaration by the Court that she has "rescinded [the mortgage] in accordance with HOEPA [and] TILA, and that the Defendants are not entitled to proceed with any foreclosure sale of the property"; (ii) a claim for injunctive relief preventing the Defendants from foreclosing on the property, among other things; and (iii) an undifferentiated claim for damages under HOEPA and TILA, in that the Plaintiff "suffered actual damages due to the failure of [HSBC] and its predecessors in interest to properly disclose finance charges associated with the loan transaction, the imposition of closing costs and fees in connection with this improper loan transaction, and otherwise."

HSBC moves to dismiss **(# 23)** the Complaint, arguing: (i) the Plaintiff fails to state a claim for damages under HOEPA because she does not allege that the mortgage was a "high cost mortgage loan" pursuant to 15 U.S.C. § 1602(aa)(1); (ii) the Plaintiff alleges TILA and HOEPA violations against Ownit, but makes no allegations that would give rise to HSBC's liability for

Ownit's violations; (iii) claims for damages under TILA and HOEPA are subject to a one-year statute of limitations from the date the transaction is completed, and thus, the Plaintiff's claims for damages are untimely; (iv) the Plaintiff fails to state a claim regarding a declaration of the effectiveness of her Rescission under TILA because she has not alleged facts showing that HSBC is a "creditor" under 15 U.S.C. § 1602(f); (v) the Plaintiff failed to commence this action within the 3-year limitations period governing rescissions under TILA; (vi) any purported Rescission was ineffective, as the Plaintiff never offered to tender back the principal sum borrowed; and (vii) the Plaintiff has failed to plead facts that would show that HSBC, as assignee, is liable for Ownit's omissions under 15 U.S.C. § 1641(e).[1]

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four

---

[1] HSBC also contends that the Plaintiff cannot maintain an action under RESPA, because, among other things, RESPA does not provide for a private right of action. In response, the Plaintiff concedes that "there is no RESPA claim in this case."

corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct.[2] *Id.* One way in which the Court might conduct its analysis is to "identify[ ]

---

[2]The Supreme Court took pains to ensure that the word "plausible" is understood to mean that the plaintiff has a demonstrable and concrete belief that a wrong has been committed and the defendant is the person responsible, as opposed to a set of facts in which a wrong might possibly and hypothetically be ascertained, and the defendant might, hypothetically, be a person who might have been responsible for that wrong. For example, in *Twombly*, the Court observed that the plaintiff in an antitrust case had sufficiently pled as a fact that two defendants had engaged in "parallel behavior." However, it found that while parallel conduct <u>might</u> be consistent with the required element of an agreement between the two defendants, "it was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior." 550 U.S. at 567. Thus, "the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement." *Id.* at 570.
Cases such as *Twombly* and *Iqbal* make clear that the "plausibility" requirement is not an invitation to this Court to speculate as to whether well-pleaded facts alleged by the pleader are

4

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**B. Timeliness**

The Court understands HSBC to raise two different issues with regard to the timeliness of the Plaintiff's claims: (i) that the Plaintiff's claims for damages are barred by a one-year statute of limitations; and (ii) the Plaintiff's claim seeking a declaration as to the efficacy of her Rescission is barred by a three-year statute of limitations.

Turning first to the damage claims, 15 U.S.C. § 1640(e) provides that an action under TILA for damages must be brought within one year from the date of occurrence of the violation.[3] With the exception of the Rescission issue, it is obvious from the face of the Complaint that the Plaintiff's allegations of TILA violations all concern disclosures that Ownit was required to make on or before the closing date of the loan. Thus, the Plaintiff's damage claims under TILA all accrued on or before November 3, 2006, and became untimely on or before November 3, 2007. To the extent it seeks damages under TILA, this action, commenced in state court in December 2009, is thus untimely.

The Plaintiff does not appear to dispute that, on its face, her claim for damages is untimely. Rather, she invokes a portion of 15 U.S.C. § 1640(e) which provides that that statute

---

likely to be proven true or not. In this sense, "plausible" is not the synonym of "believable."

[3]The parties apparently agree that, because HOEPA is an amendment to TILA, the same statute of limitations, and the same analysis, would apply to HOEPA claims for damages as well.

of limitations in TILA "does not bar a person from asserting a violation of this subchapter in an action to collect the debt . . . as a matter of defense of recoupment or set-off in such action." This provision clearly does not apply here. The Plaintiff is asserting her damages claims directly in her own Complaint, not raising them as defenses of recoupment or setoff in an action by HSBC to collect the debt.

The Plaintiff offers an attenuated argument that she commenced this suit in response to HSBC commencing a foreclosure proceeding under C.R.C.P. 120 in state court. She appears to contend that a Rule 120 proceeding is "an action to collect the debt," and because defenses of recoupment and setoff are not cognizable in a Rule 120 proceeding, this action constitutes her attempt to assert a "defense" to the Rule 120 proceeding.

She offers no authority for the proposition for this novel interpretation of 15 U.S.C. § 1640(e)'s terms, and the Court finds it unpersuasive. An action under C.R.C.P. 120 is not an action "to collect the debt." Its purpose is "very narrow," limited to "determin[ing] whether there is a reasonable probability that a default or other circumstance authorizing exercise of a power of sale has occurred." *Plymouth Capital Co. v. District Court*, 955 P.2d 1014, 1017 (Colo. 1998). Because a Rule 120 proceeding is not a means by which a creditor can "collect the debt," Colorado's courts have made it clear that claims for damages by debtors, whether they be independent or cognizable as recoupment or setoff, are not proper subjects for consideration within the Rule 120 hearing. *Id.* Thus, because a Rule 120 proceeding does not purport to adjudicate the various issues arising in a full-blown suit to collect a debt, it does not give the Plaintiff the opportunity to reassert otherwise stale TILA claims as "defenses" to matters that are beyond the scope of the Rule 120 proceeding. Moreover, it is obvious that the Plaintiff's

damage claims are not asserted in a defensive capacity as setoffs to a debt (a debt that she purports to have rescinded), but rather, are offensive in nature, demanding damages regardless of whether HSBC is able to collect its own debt. Thus, the Court finds that the § 1640(e)'s exception to the limitations period for defensive claims in the nature of recoupment or setoff does not apply to the Plaintiff's claims here.

Accordingly, the Court grants that portion of HSBC's motion that seeks dismissal of the Plaintiff's claims for damages under TILA and HOEPA, as those claims are untimely.

Second, HSBC seeks dismissal of the Plaintiff's claim for a declaration as to the effectiveness of her attempted Rescission of the loan. 15 U.S.C. § 1635(a). Rescission is initiated by the borrower "notifying the creditor . . . of his intention to do so." *Id.* The creditor then has 20 days to acknowledge the Rescission by returning to certain funds and property to the borrower, which, in turn, obligates the borrower to tender back to the lender the funds received in the transaction. 15 U.S.C. § 1635(b). A borrower can rescind a TILA-covered transaction within three days of that transaction closing. § 1635(a). However, if the lender fails to properly deliver information and forms relating to this right at the time of closing, the three-day period begins to run on the date that the information and forms are delivered. *Id.* If the required information and forms are <u>never</u> provided by the lender, TILA sets an absolute three-year limitation on the borrower's right of Rescission, measured from the closing of the transaction. 15 U.S.C. § 1635(f).

Here, the Complaint alleges that the transaction closed on November 3, 2006, and that Ownit failed to provide the Plaintiff at closing with the TILA-required Rescission notices. The Complaint is silent as to when Ownit (or HSBC) eventually supplied the Plaintiff with the

required information,[4] but does allege that the Plaintiff notified HSBC on September 9, 2008 of her intention to rescind the loan. TILA makes clear that a borrower's Rescission occurs upon the borrower giving notice of the Rescission to the lender. § 1635(a). Thus, the Complaint adequately alleges that the Plaintiff attempted a timely Rescission.

HSBC's argument is premised upon the contention that § 1635(f)'s reference to "an obligor's right of Rescission" expiring after three years requires the borrower to not only attempt Rescission during the three-year period, but also to recognize that such attempt was rebuffed by the lender and commence suit to adjudicate the efficacy of the Rescission attempt, all within the three-year period. HSBC's authority for this proposition is *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998). There, borrowers entered into a mortgage transaction in 1986, and defaulted on the loan in 1991. When the lender began foreclosure proceedings, the borrowers asserted a defense of Rescission. Three layers of state courts rejected the borrowers' contention that Rescission could be raised in a defensive posture beyond the three-year period, and the U.S. Supreme Court affirmed. *Id.* at 414-15. The Court acknowledged the general principle that statutes of limitation generally prohibit parties from asserting stale claims in an offensive capacity, but do not prevent parties from asserting those claims defensively. *Id.* at 415. However, it concluded that the three-year time period of § 1635(f) was not a statute of limitations – "bar[ring] the remedy for its enforcement" – but rather a statute of repose, "operat[ing], with the lapse of time, to extinguish the right which is the foundation of the claim."

---

[4]The Court does not understand HSBC's timeliness argument to contend that the Plaintiff's September 9, 2008 Rescission occurred more than three days after it tendered her the TILA-required forms and information. Rather, the Court understands HSBC to concede that, for purposes of this motion, no disclosures were ever made to the Plaintiff, and only the absolute three-year limitations period in § 1635(f) is at issue.

*Id.* at 416. The language of § 1635(f), the Court explained, "talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Id.* at 417. Absolute restrictions on the period of time in which a borrower could assert Rescission was justified, said the Court, because "a statutory right of Rescission could cloud a banks title on foreclosure, [and thus] Congress may well have chosen to circumscribe that risk" by requiring assertions of Rescission, offensively or defensively, to be made within three years. *Id.* at 418-19.

*Beach* is not directly on point: there is no indication in that case that the borrowers purported to give timely notice of Rescission to the lender, unlike the Plaintiff here. However, the reasoning of *Beach* warrants the conclusion urged by HSBC: that Rescission must <u>both</u> be noticed <u>and</u> (if ignored or rejected by the lender) sued upon within three years. As the Court made clear, the three-year period that marks the lifespan of the right of Rescission must necessarily be coterminous with the "limitation on the time for seeking a remedy" of Rescission, as the statutory language made it "superfluous" to have a separate limitations period for enforcing the right. The conclusion that the right must both be invoked and sued upon within the three-year period is consistent with the Court's explanation of the purpose of such a rule: by ensuring that the right of Rescission expires if not expressly sued upon within three years, banks who obtain title to property in foreclosure are protected against claims of rescissions attempted within the three-year period but not sued upon until after the foreclosure has occurred. To hold otherwise introduces a lacuna between the expiration of the right to rescind and the time in which the lender might learn of a purportedly timely Rescission that it does not recall receiving, with foreclosure (and perhaps even subsequent sale) falling within that temporal no-man's-land.

Under this conception of the law, the Plaintiff's claim seeking a declaration that her Rescission was effective is untimely. The transaction closed on November 3, 2006, meaning that the Plaintiff had until November 3, 2009 to commence a suit seeking to vindicate any attempted Rescission that took place during that time period. Although the Plaintiff attempted a Rescission in September 2008, it was obvious to her shortly thereafter that HSBC was not honoring that Rescission. Thus, it became incumbent upon the Plaintiff to sue to enforce that attempted Rescission by November 3, 2009, and because this suit was commenced in state court on December 21, 2009, the claim seeking Rescission would be untimely.

That being said, there are a number of cases that do not read *Beach* as this Court does. In *In re Hunter*, 400 B.R. 651 (Bankr. N.D.Ill. 2009), the trustee filed an adversary complaint, seeking to rescind the borrower's loan based on the lender's failure to comply with TILA. The loan had closed on September 24, 2004, and the borrower had allegedly sent a notice of Rescission on September 10, 2007, within the three-year period, but the trustee did not commence the suit until May 21, 2008. The lender moved to dismiss the adversary proceeding and the court identified the issue before it as "whether a consumer who provides timely notice of Rescission to a creditor is also required to file a lawsuit seeking to enforce rescission within the time limit set forth in § 1635(f)." *Id.* at 659. The court ultimately concluded that, if the borrower timely attempted a Rescission within the three-year period, the lender's failure to respond to the notice of Rescission is "a separate TILA violation," and thus, "the right to rescind did not expire until one year from that date of that violation" as provided for by § 1640(e). *Id.* at 662.

This Court does not find *Hunter* persuasive. Among other things, it fails to grapple with

the Supreme Court's clear statement that grafting a limitations period onto the three-year statute of repose would be "superfluous." Nevertheless, even if this Court were to adopt the rule of *Hunter*, the Plaintiff's suit for a declaration of Rescission would still be untimely. By the Plaintiff's own assertion, she attempted Rescission by mailing a notice to HSBC on September 9, 2008. HSBC did not respond to the notice within 20 days, as required by § 1635(b), and thus, under *Hunter*, a TILA violation arose on or about September 29, 2008. By operation of §1640(a), the Plaintiff then had one year to commence suit to enforce her attempted Rescission, with that period expiring on or about September 29, 2009, approximately two months before this suit was commenced. Thus, even under the rule in *Hunter*, this Rescission claim would be untimely.[5]

The Plaintiff contends that she asserted the existence of the September 2008 notice of Rescission in a July 29, 2009 response to HSBC's Rule 120 petition. *See Docket* # 55, Ex. 24 at ¶ 13. She contends that either: (i) this amounted to a timely assertion of the claim seeking enforcement of the attempted Rescission, even though the state court refused to entertain the issue within the limited scope of the Rule 120 proceeding; or (ii) the invocation of the Rescission in a judicial proceeding constitutes an independent attempt at Rescission that occurred within the three-year period of § 1635(f), and was thereafter sued upon within one year as required by *Hunter*. Both arguments are unpersuasive.

The former argument assumes that simply asserting the "defense" of Rescission in a Rule

---

[5]Relying on *Hunter*, the Magistrate Judge reached this same conclusion on May 26, 2010, denying **(# 63)** the Plaintiff's Motion for Preliminary Injunction. Although that ruling was subject to interlocutory appeal, 28 U.S.C. § 1292(a)(1); *Muhammad v. U.S.*, 295 Fed.Appx. 289, 291 (10th Cir. 2008), the Plaintiff did not appeal.

120 proceeding is the equivalent of commencing suit seeking a declaration of rights under TILA. A Rule 120 proceeding is not the equivalent of a civil lawsuit. It is not adversarial in nature; its orders are not final or appealable; the notice procedures require only service by mail, nor formal process; its inquiry is constrained to an extremely narrow issue; the standard of proof required is nothing more than a "reasonable probability"; and the rule expressly reserves the rights of parties to litigate the same issues (and others) in any other proceeding. *Plymouth Capital,* 955 P.2d at 1016; C.R.C.P. 120(d); *United Guar. Resid. Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo. App. 1991). Moreover, the findings of the Rule 120 court are not entitled to preclusive effect. *Vanderlaan, id.* Thus, even if the Rule 120 court had entertained the Plaintiff's defense of Rescission, nothing that court found with regard to that issue would have finally and conclusively resolved the parties' rights on that question, and further litigation in a traditional lawsuit would have been necessary to obtain an actual adjudication of the parties' rights. Thus, one can hardly say that raising an issue in a proceeding that is non-final and non-preclusive is the equivalent of asserting a claim premised upon that issue so as to halt the running of the statute of limitations.

The latter argument is foreclosed by this Court's adoption of the rule in *Beach* – that an action to determine the effectiveness of a Rescission must be <u>commenced</u> within three years of the loan. Declaring the June 29, 2009 filing to be an alternative "notice of Rescission" has the advantage of locating the date of Rescission within the one-year period in which a suit must be commenced under *Hunter*, but this Court finds the rule in *Hunter* to be incorrect. In any event, the Complaint in this action asserts that the Rescission occurred on September 9, 2008, not June 29, 2009. This Court cannot seek to re-draft the Complaint in order to rescue the Plaintiff from

the untimeliness of the claims as actually pled.

With the dismissal of t the Plaintiff's claims for both monetary damages and a declaration of Rescission, the only remaining claim for relief in the Complaint requests injunctive relief that would prohibit HSBC from attempting foreclosure, requiring it to withdraw its request for foreclosure.

All of the injunctive relief requested is premised on the notion that the Plaintiff can demonstrate that she was entitled to rescind the transaction. Because the foregoing discussion establishes that any claim by the Plaintiff to confirm the efficacy of her attempted Rescission is untimely, the Court finds that the "claim" for injunctive relief is similarly subject to dismissal. Moreover, the Court understands that although Defendant O'Malley, the Public Trustee, has not separately moved for dismissal of the claims herein, Ms. O'Malley is not the subject of any distinct claims, and is named only to ensure that complete injunctive relief can be obtained. Because there are no cognizable claims asserted against Ms. O'Malley, the granting of HSBC's motion will result in this action being dismissed in its entirety.[6]

---

[6]The Plaintiff requests leave to replead if this Court is prepared to grant the Defendant's motion. Because the Court finds that the Plaintiff's claims are subject to dismissal as untimely, not as a result of some factual pleading deficiency, the Court denies the request for leave to replead.

## **CONCLUSION**

For the foregoing reasons, HSBC's Motion to Dismiss **(# 23)** is **GRANTED**. The Complaint is **DISMISSED** in its entirety as to both Defendants. The Clerk of the Court shall enter judgment consistent with this Order and shall close this case.

Dated this 31st day of August, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge